FILED

2010 Oct-25  PM 03:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **BRENDA SMITH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.:  4:09-CV-1591-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of the Social Security** | ) |
| **Administration,** | ) |
| | ) |
| **Defendant.** | ) |

---

## <u>MEMORANDUM OPINION</u>[1]

Plaintiff Brenda Smith ("Ms. Smith") brings this action pursuant to 42 U.S.C.

§ 1614(a)(3)(A) of the Social Security Act.  She seeks review of a final adverse

decision of the Commissioner of the Social Security Administration (the

---

[1] The undersigned has rendered several other comparable decisions which address the inadequacies of the respective ALJ's residual functional capacity ("RFC") determinations from which the framework, analysis, and disposition of this case persuasively flow.  *See, e.g., Mahaley v. Astrue*, No. 5:09-CV-0347-VEH, (Docs. 12, 13) (N.D. Ala. Feb. 18, 2010) (reversing and remanding under similar circumstances in which the court found that the ALJ's RFC finding was not supported by substantial evidence); *Glover v. Astrue*, No. 3:09-CV-0033-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 4, 2010) (same); *Johnson v. Astrue*, No. 3:08-CV-1761-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 12, 2010) (same); *Martin v. Astrue*, No. 5:09-CV-1029-VEH, (Docs. 11, 12) (N.D. Ala. Mar. 25, 2010) (same); *Shelton v. Astrue*, No. 5:09-CV-1253-VEH, (Docs. 8, 9) (N.D. Ala. Apr. 26, 2010) (same).

"Commissioner" or "Secretary"), who denied her application for Supplemental Security Income ("SSI").[2]   Ms. Smith timely pursued and exhausted her administrative remedies available before the Commissioner.   The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.[3]

## FACTUAL AND PROCEDURAL HISTORY

Ms. Smith was a 44-year-old female at the time of her hearing before the administrative law judge (the "ALJ") held on February 26, 2007.  (Tr. 43, 309).  Ms. Smith attended high school and completed the twelfth grade.  (Tr. 314).  She also was a student at Gadsden State Community College for two years, but never did obtain a college degree.  (Tr. 314-15).

Ms. Smith's prior work experience includes employment as a substitute school teacher, a cashier, a cook, an assembly worker, and a medical office worker.  (Tr. 337-340).  Ms. Smith claims disability beginning on February 1, 2005, due to lower back problems, depression, anxiety, carpal tunnel syndrome in both hands, and mitral

---

[2]   In general, the legal standards applied are the same regardless of whether a claimant seeks SSI or Disability Insurance Benefits ("DIB") under the Social Security Act.  However, separate, parallel statutes and regulations exist for SSI and DIB claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

[3]   42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

valve prolapse.  (Tr. 69).

Ms. Smith protectively filed a Title XVI application for SSI on May 20, 2005.

(Tr. 13, 20, 43).  The SSI claim was denied initially on September 27, 2005.  (Tr. 13,

22).  Ms. Smith timely filed a request for a hearing that was received by the Social

Security Administration on November 3, 2005.  (Tr. 13, 27).  The hearing before the

ALJ was held on February 26, 2007.  (Tr. 13, 309).  The ALJ concluded Ms. Smith

was not disabled as defined by the Social Security Act and denied her SSI application

on June 8, 2007.  (Tr. 13-19).

Ms. Smith filed a request for review on August 7, 2007.  (Tr. 8).  On June 4,

2008, the Appeals Council denied her request, which resulted in the ALJ's decision

being the final decision of the Commissioner.  (Tr. 4).

On August 10, 2009, Ms. Smith filed her complaint with this court asking for

review of the ALJ's decision.  (Doc. 1).  Briefing related to this appeal consist of an

opening brief (Doc. 10) filed by Ms. Smith on February 11, 2010, a responsive brief

(Doc. 12) filed by the Commissioner on March 11, 2010, and a reply brief (Doc. 13)

filed by Ms. Smith on March 25, 2010.

On June 29, 2010, Ms. Smith also filed a separate Motion to Remand with

Submission.  (Doc. 14).  The Motion to Remand with Submission has been

extensively briefed by the parties.  (*See* Docs. 15-19).  This court has carefully

considered the record, and for the reasons stated below, reverses the Commissioner's denial of benefits, and remands the case for further development and consideration.

## STANDARD OF REVIEW

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the

Regulations promulgated thereunder.[4]   The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."   20 C.F.R. § 404.1505(a).   To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."   20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.   20 C.F.R. § 404.1520(a)(4)(i-v).   The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;
(2)   whether the claimant has a severe impairment;
(3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)   whether the claimant can perform her past work; and
(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R.

---

[4]   The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through September 16, 2010.

5

section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found Ms. Smith had not engaged in substantial gainful activity since the onset date of her disability, *i.e.*, February 1, 2005. (Tr. 18 ¶ 2). Thus, the claimant satisfied step one of the five-step test. 20 C.F.R. § 404.1520(b).

Under step two, the ALJ concluded that "[t]he claimant has the 'severe' impairments of status post carpal tunnel releases (1980[s]); shoulder; back; and anxiety/depression." (Tr. 18 ¶ 3; *see also* Tr. 16 (same)). Accordingly, the ALJ concluded that Ms. Smith satisfied the second step of the sequential disability evaluative process. 20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Ms. Smith did not have an impairment

or a group of impairments that met or medically equaled one of the listed impairments

in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 16, Tr. 18 ¶ 3).  Ms. Smith does

not challenge this determination on appeal.

The ALJ then evaluated Ms. Smith's RFC at step four, and the claimant was

found to have the ability "to perform simple, repetitive, non-complex tasks, working

primarily with things as opposed to the general public, at the light level of physical

exertion in a temperature controlled environment with only occasional bending and

stooping and no driving."[5]   (Tr. 18 ¶ 5; *see also* Tr. 17).  The ALJ additionally

described Ms. Smith's functionality:  "The credible evidence of record establishes

that the claimant experiences mild to moderate functional limitations upon her ability

to perform basic work activities as a result of her pain and depression/anxiety.  Any

---

[5]  The Regulations define light work as:

[L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (current through September 16, 2010).

contentions to the contrary are not credible." (Tr. 17).  Further, the ALJ accepted the testimony of the vocational expert that "the claimant is unable to perform her past relevant work."  (Tr. 18 ¶ 6; *see also* Tr. 17).

Because of the ALJ's finding that Ms. Smith had no past relevant work experience, it was necessary to continue to step five of the sequential analysis.  (Tr. 17-18).  Factoring in the Medical-Vocational Guidelines as a framework, and relying upon testimony from the vocational expert, the ALJ concluded that Ms. Smith was "capable of performing a significant number of light jobs, considering her age, education, past work experience, and residual functional capacity."  (Tr. 18 ¶ 6).  More specifically, the ALJ indicated that Ms. Smith could perform "lighter cooking positions" due to the transferability of her skills from "her past job as a cook."  (Tr. 19 ¶ 8).  Accordingly, the ALJ concluded Ms. Smith was not disabled as defined by the Social Security Act, "based on her application filed on May 20, 2005[,]" and denied her SSI claim.  (Tr. 19).

## ANALYSIS

This court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference.  *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)).  In contrast to factual findings, however, the

Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574-75); *Martin*, 894 F.2d at 1529 ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *See Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (emphasis added) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[6]

In this appeal, Ms. Smith raises several different issues. (*See generally* Doc. 10). One of Ms. Smith's challenges relates to the ALJ's rejection of a consulting physician's opinion that, based upon his mental assessment of her, she is disabled and unable to work. (Doc. 10 at 2; *id.* at 11 ("The ALJ substituted his opinion for the opinion of Dr. Fleming, a clinical neurologist, and the ALJ did not state sufficient reasons for finding that Dr. Fleming was not credible."); *see also* Tr. 262 ("Given her emotional problems, Ms. Smith is not able to make acceptable or appropriate work decisions at this time."); Tr. 263 ("[Ms. Smith's] interactions with coworkers and

---

[6]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

supervisors would be very difficult given her high levels of depression and anxiety.")).

Similarly, Ms. Smith's Motion to Remand with Submission seeks a remand of this case:

> [T]o the Commissioner to fully consider the report of Dr. Fleming . . ., who performed a consultative evaluation dated 8/15/05 which ALJ Munford ignored and substituted his own opinion for, in light of the attached report of Dr. David Wilson[, a psychologist] dated 5/28/10.

(Doc. 14 at 1).  The court turns to the lack of any underlying medical opinion by a physician in support of the ALJ's RFC determination that Ms. Smith is capable of performing light work with additional restrictions, and agrees with Ms. Smith that, under the circumstances of her case, the ALJ committed reversible error.[7]

## I.   IN THE ABSENCE OF A SUPPORTING MEDICAL SOURCE STATEMENT OR A PHYSICAL CAPACITIES EVALUATION BY A PHYSICIAN, THE ALJ'S RFC DETERMINATION THAT MS. SMITH CAN PERFORM A REDUCED RANGE OF LIGHT WORK IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

In support of his RFC determination, the ALJ explained:

> In reaching this conclusion, I have considered the opinions of the nonexamining state agency medical consultants (Exhibits 8F through 10F).   These consultants indicated that the claimant's mental impairments impose only a moderate restriction of her daily activities;

---

[7]  As a result, the court does not reach the merits of the other issues presented on appeal, including those contained in the separately filed Motion to Remand with Submission.

a moderate limitation of her ability to maintain social functioning; a moderate limitation of her ability to maintain concentration, persistence, or pace; and no extended duration episodes of decompensation in work settings. Because they do not contradict the clinic reports of Dr. Smith, the non-examining assessments are given significant, although not controlling authority.

(Tr. 17).

The court has studied the collection of exhibits expressly referenced by the ALJ in his decision and fails to see how they provide substantial evidentiary support for his RFC determination. Exhibit 8F (Tr. 264-271) is a physical RFC completed by a non-physician disability examiner named Cindy Vaughan ("Ms. Vaughan") on August 16, 2005. (Tr. 271). This document fails to substantially support the ALJ's decision for at least three reasons.

First, the physical RFC is deficient because it was not determined by a medical doctor, but rather it was authored by the state agency examiner, Ms. Vaughan, after conducting a paper review of Ms. Smith's records. Second, even if it were appropriate for the ALJ to rely upon a RFC prepared by a non-physician to support his RFC determination, listed as Ms. Smith's primary physical diagnosis on the physical RFC form is "[m]inimal [s]pondylosis, LS spine," and absent from the document is any indication that the functional impact of a secondary diagnosis was factored into the evaluation. (Tr. 264).

In fact, at the end of the assessment, Ms. Vaughan reported that Ms. Smith's allegations regarding carpal tunnel syndrome were "only partial credible." (Tr. 269). However, the ALJ determined that, in addition to suffering from severe shoulder and back problems (which is comparable to the spondylosis/spine diagnosis on the physical RFC),[8] Ms. Smith also was severely impaired by her carpal tunnel condition. (Tr. 18 ¶ 3).  Because the ALJ determined that carpal tunnel syndrome was one of Ms. Smith's severe physical impairments, the RFC prepared by Ms. Vaughan, which fails to even list this as a secondary condition, much less clarify the degree to which, if any, it was factored into the overall physical functional assessment of Ms. Smith, cannot provide substantial evidence that Ms. Smith is capable of performing a reduced range of light work.

Third, nowhere in this non-physician generated physical RFC does the court find support for the restrictions on the light work that the ALJ found to be appropriate for Ms. Smith, including working in a temperature controlled environment with only occasional bending and stooping and no driving.  Therefore, for all these reasons, Exhibit 8F fails to provide substantial evidence in support of the ALJ's RFC determination that Ms. Smith is capable of performing light work with additional

---

[8] *Merriam-Webster Online Medical Dictionary* defines the term "spondylosis" as "any of various degenerative diseases of the spine." *See* http://www.merriam-webster.com/medical/spondylosis (accessed on Sept. 30, 2010).

restrictions.

Moreover, neither Exhibit 9F nor Exhibit 10F addresses the deficiencies identified above.  Exhibit 9F (Tr. 264-77) is a mental RFC and Exhibit 10F (Tr. 278-291) is a psychiatric review technique, both of which were prepared by Dr. Steven Dobbs ("Dr. Dobbs") on September 15, 2005.  Because these evaluations by Dr. Dobbs are limited in scope to Ms. Smith's mental functioning, they do not lend any support to the ALJ's decision with respect to Ms. Smith's physical RFC.

Furthermore, the court has been unable to locate (and Defendant has not pointed to (*see generally* Doc. 12)) a medical source opinion[9] or a physical capacities evaluation conducted by a physician that substantiates Ms. Smith is capable of performing light work given her severe shoulder, back, and carpal tunnel conditions or that delineates the vocational restrictions inserted by the ALJ, such as that she work in a temperature controlled environment with only occasional bending and stooping and no driving.  Such an omission from the record is significant to the substantial evidence inquiry pertaining to the ALJ's RFC determination.  *See, e.g., Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) ("The ALJ failed to refer

---

[9] "Medical source statements are 'medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis.'"  SSR 96-5p.

to-and this Court has not found-a proper, medically determined RFC in the record.").

The court did locate a consultative examination of Ms. Smith performed by Dr. Henry Born on August 4, 2005.  (Tr. 15; *see also* Tr. 256-58).  After reporting upon several raw physical findings applicable to Ms. Smith (Tr. 257), Dr. Born opined that "[i]t appears that her major problem is her nervous state."  (Tr. 258).  Further, nowhere within these records did Dr. Born express his opinion about the impact of Ms. Smith's impairments in <u>vocational</u> terms or attach a physical (or mental) capacities evaluation of Ms. Smith.

More specifically, Dr. Born gave no indication about Ms. Smith's strength or other exertional abilities, much less did he make a recommendation on the range of work she is physically capable of performing given her collection of severe impairments.  *See, e.g., Rohrberg*, 26 F. Supp. 2d at 311 ("Where the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make that connection himself.'") (citation omitted).  Similarly, Dr. Born did not suggest any of the job-related non-exertional restrictions that the ALJ placed upon Ms. Smith.

As another district judge of this court aptly explained the RFC issue in the context of an ALJ who comparably determined, without the benefit of a physical

capacities evaluation conducted by a physician, that the claimant was able to perform her past relevant work:

> While the Record contains Ms. Rogers' [s] medical treatment history, it lacks any physical capacities evaluation by a physician. The ALJ made his residual functional capacity evaluation without the benefit of such evaluation. An ALJ is allowed to make some judgments as to residual physical functional capacity where so little physical impairment is involved that the effect would be apparent to a lay person. *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15 (1st Cir. 1996). In most cases, including the case at bar, the alleged physical impairments are so broad, complex, and/or ongoing that a physician's evaluation is required. *Id.* In order to have developed a full, fair record as required under the law, the ALJ should have re-contacted Ms. Roger's [sic] physicians for physical capacities evaluations and/or sent her to physicians for examinations and physical capacities evaluations. Further, Ms. Rogers' [s] ability to lift and to manipulate objects must be thoroughly evaluated by at least one physician. These evaluations shall be obtained upon remand. Ms. Rogers' [s] residual functional capacity was not properly determined nor supported by substantial evidence in this case.

*Rogers v. Barnhart*, No. 3:06-CV-0153-JFG, (Doc. 13 at 5) (N.D. Ala. Oct. 16, 2006) (emphasis added); *see also Manso-Pizarro*, 76 F.3d at 17 ("With a few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record.") (emphasis added) (citations omitted); *Rohrberg*, 26 F. Supp. 2d at 311 ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (emphasis added)

(citation omitted).

Comparable to *Rogers*, *Manso-Pizarro*, and other similar cases, a lay person such as an ALJ is not able to discern Ms. Smith's work-related exertional abilities and appropriate non-exertional restrictions based upon the unfiltered information contained in her medical records. Moreover, the lack of a medically-determined physical RFC is particularly critical here when, undisputably, Ms. Smith has no relevant past work experience upon which the ALJ's RFC determination of light work with additional restrictions might be substantially based. As the undersigned has previously recognized in another fifth-step burden decision that similarly resulted in a remand for further development of the claimant's functional abilities:

> The Eleventh Circuit has held that the absence of a physician's opinion regarding a plaintiff's functional limitations does not morph into an opinion that the plaintiff can work. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). "Such silence is equally susceptible to either inference, therefore, no inference should be taken." *Id.*

*Clemmons v. Barnhart*, No. 3:06-CV-1058-VEH, (Doc. 22 at 11) (N.D. Ala. June 11, 2007).

Therefore, in the absence of a medical source statement and/or any physical capacities evaluation conducted on Ms. Smith by a physician that substantiates her ability to perform light work with certain non-exertional restrictions given her severe impairments of shoulder pain, back pain, and carpal tunnel syndrome, the record has

not been adequately developed. *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history.") (citations omitted).

The ALJ's determination that Ms. Smith can perform light work with certain non-exertional restrictions is not supported by substantial evidence. Accordingly, the decision of the Commissioner is due to be reversed, and the case remanded for further proceedings consistent with this memorandum opinion.

## II.    The ALJ's Mental RFC Determination Is Also Deficiently Supported.

In arriving at his RFC determination relating to Ms. Smith's severe impairment of anxiety/depression, the ALJ concluded that Ms. Smith should "perform simple, repetitive, non-complex tasks, working primarily with things as opposed to the general public." (Tr. 18 ¶ 5). Although worded differently, these restrictions seem to resemble at least some of those suggested by Dr. Fleming:

> Ms. Smith currently is exhibiting significant symptoms of both depression and anxiety with resultant agoraphobia. Ms. Smith does not seem able to cope with the demands of a normal work environment from an emotional standpoint at this time. Her interactions with coworkers and supervisors would be very difficult given her high levels of

17

depression and anxiety.   Ms. Smith does seem to understand instructions, but <u>would have difficulty carrying out instructions given her attention and concentration and short-term memory limitations</u>.

(Tr. 263) (emphasis supplied).

However, in formulating this mental RFC determination, the ALJ "considered the opinions of Dr. Fleming" but "assign[ed] little weight to these conclusions" because he "examined the claimant on a one-time basis and does not have an ongoing treating relationship with the claimant." (Tr. 16).  The ALJ also indicated that Dr. Fleming's conclusions about Ms. Smith's job-related mental limitations were inconsistent with the medical records provided by Dr. Kenny E. Smith ("Dr. Smith"), Ms. Smith's treating physician.  (*Id.* ("Dr. Smith's treatment records indicate that her depression and anxiety are fairly well controlled with medication.")).[10]  Therefore, Dr. Fleming's report cannot constitute substantial evidence for the mental component of the ALJ's RFC determination relating to Ms. Smith.

Dr. Dobbs did prepare a mental RFC for Ms. Smith that substantiates the

---

[10]   The court notes that the ALJ's decision references no specific treatment records from Dr. Smith as underlying support for this point.   Similarly, the Commissioner's brief fails to cite to any particular notes from Dr. Smith, and instead merely and circularly refers back to the ALJ's decision as authority for this finding. (Doc. 12 at 7 (citing Tr. 16)).  Additionally, to the extent that Dr. Smith's records do substantially substantiate this conclusion drawn by the ALJ, still noticeably absent is <u>any vocationally-based opinion about Ms. Smith</u> provided by Dr. Smith that contradicts Dr. Fleming's <u>work-related functional conclusions</u> stemming from her depression and anxiety.

restrictions that Ms. Smith should "perform simple, repetitive, non-complex tasks[.]"

(Tr. 18 ¶ 5).  More specifically, Dr. Dobbs concluded that Ms. Smith was:  A. <u>Able to understand and remember simple and detailed but not complex instructions</u>.

>  B.    Able to sustain attention/concentration for two hour periods to complete a regular workday at an acceptable pace and attendance schedule.  Proximity to others shouldn't be intense.

>  C.    Able to interact appropriately in casual uncrowded settings and respond appropriately to constructive instructions.

>  D.    Able to respond to at least <u>simple/infrequent changes in routine</u>.

(Tr. 274 (emphasis added)).  Thus, when determining Ms. Smith's overall RFC, the ALJ seems to have adopted Dr. Dobbs's first (*i.e.*, "simple and detailed but not complex instructions" as comparable to "simple"  and "non-complex tasks") and last (*i.e.*, "simple/infrequent changes in routine" as comparable to "repetitive") job-related restrictions.

However, less clear from the ALJ's decision is why he discounted the remaining delineated job restrictions suggested by Dr. Dobbs.  While the ALJ did acknowledge that Dr. Dobbs was only a reviewing physician and that he never saw Ms. Smith in person, the ALJ still indicated that his assessment was "given significant, although not controlling authority."  (Tr. 17).

As the undersigned recently observed in another social security appeal

resulting in a remand:

> In a comparable case, *Holmes v. Astrue*, 1:09-CV-01523-AJB, 2010 WL 2196600, at *16 n.17 (N.D. Ga. May 27, 2010), the court held that the ALJ's decision was undermined because he credited and discredited different parts of the same report.  The court indicated that the ALJ was required to provide an explanation for how he considered and resolved inconsistent uses of medical opinions but that the ALJ failed to do so in this case.  *Id.*  As a result of this and other errors, the court found that the "ALJ erred in evaluating the medical opinions" and that the ALJ "made his RFC determination without properly considering the medical opinions."  *Id.* at *20.

*Watson v. Astrue*, No. 6:09-CV-1676-VEH, (Doc. 14 at 11) (N.D. Ala. Sept. 24, 2010).  Likewise, to allow for meaningful review, the ALJ must adequately state his reasons for purportedly assigning "significant" weight to Dr. Dobbs's report but then actually only accepting certain portions of it, when such physician's overall evaluation of Ms. Smith supports a finding of greater restrictions on her mental RFC than the ALJ ultimately found.

Further, and regardless of the ALJ's decision to reject portions of Dr. Dobbs's overall mental vocational assessment without adequately explaining why, nowhere did Dr. Dobbs indicate that Ms. Smith "should work primarily with things as opposed to the general public" (Tr. 18 ¶ 5), and the court cannot find any other medical opinion within the record that uses this terminology or suggests this particular limitation.  This uncorroborated conclusion reached by the ALJ is particularly

troubling in light of the ALJ's failure to discuss what impact, if any, Ms. Smith's collection of physical impairments, including carpal tunnel syndrome, might have on her ability "to work primarily with things" because of her mental impairments. (Tr. 17). Accordingly, for all these reasons, the mental component of the ALJ's RFC determination is also not supported by substantial evidence, and a remand to the Commissioner is appropriate due to this alternative basis.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence. Accordingly, the decision of the Commissioner will be remanded by separate order.

**DONE** and **ORDERED** this the 25th day of October, 2010.

**VIRGINIA EMERSON HOPKINS**
United States District Judge